UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSAICA ADVANTAGE, INC.,

                        Plaintiff,

                                         CIVIL CASE NO. 04-40374

v.

DETROIT ADVANTAGE ACADEMY, INC.,     HONORABLE PAUL V. GADOLA
                                                  U.S. DISTRICT COURT
                        Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S FIRST AMENDED PETITION FOR CONFIRMATION AND ENFORCEMENT OF AWARD AND DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court are Plaintiff's First Amended Petition for Confirmation and Enforcement of Interim Award[1] and Defendant's motion to dismiss the same. For the reasons that follow, Plaintiff's petition is granted and Defendant's motion is denied.

**I.**    **Background**

Defendant Detroit Advantage Academy is a public school academy (more commonly known as a "charter school"). Defendant is created under a Charter Contract with Grand Valley State University, dated April 26, 2000. Grand Valley State University bears the responsibility of generally overseeing Defendant's operations, though as a public school academy, Defendant enjoys a certain level of autonomy in managing itself.

---

[1] Though Plaintiff's petition is titled "for Confirmation and Enforcement of Interim Award," Plaintiff actually requests confirmation and enforcement of the final award, as will be made clear below.

On May 1, 2000, Defendant signed a contract with Advantage Schools, Inc., a company which operates and manages public school academies. The agreement ("Management Agreement") stated that Advantage Schools, Inc., would bear the responsibility for operating the public school academy. Paragraph 10 of the Management Agreement was a binding arbitration clause which stated: "All disputes arising out of or concerning this Agreement will be submitted to binding arbitration in accordance with the rules of the American Arbitration Association." Def. Mot., Ex. A, ¶ 10 (Jan. 25, 2005).

Some time after the Management Agreement was signed, Advantage Schools, Inc., became Mosaica Advantage, Inc., due to a business reorganization. Mosaica Advantage is the plaintiff in this case. Neither party disputes the fact that Plaintiff Mosaica Advantage has all the rights and duties of Advantage Schools, Inc., in relation to Defendant. On January 24, 2002, the Management Agreement was amended. Both Plaintiff and Defendant agree that they are bound by the Management Agreement as amended.

During the following years, the relationship between Plaintiff and Defendant soured. Defendant alleges that Plaintiff mismanaged the public school academy, while Plaintiff alleges that Defendant unjustifiably deprived Plaintiff of just compensation. The dispute culminated in a demand for arbitration before the American Arbitration Association ("AAA"), first filed by Plaintiff on July 10, 2003. Through the remainder of 2003 and 2004, various actions were taken by the AAA, and a lawsuit was filed in the Eastern District of Michigan and assigned to United States District Judge Paul D. Borman. The suit was dismissed when the court found that the dispute in the case was governed by arbitration as specified by the Management Agreement. The AAA initially gave an

"interim" award to Plaintiff, and Plaintiff attempted to enforce the interim award by means of a petition filed in the Eastern District of Michigan on September 10, 2004. This petition was again assigned to Judge Borman. On December 23, 2004, Judge Borman disqualified himself from the case and it was reassigned to this Court.

On December 30, 2004, the three-person AAA arbitration panel unanimously issued Plaintiff Mosaic a "final" award for a total of $2,015,405.68. *See* Pl. Pet., Ex. G (January 19, 2005). The arbitration panel also dismissed with prejudice a counterclaim made by Defendant against Plaintiff. On January 19, 2005, Plaintiff filed the petition that is currently under consideration by this Court. In the petition, Plaintiff asks the Court to confirm the final January 3, 2005, arbitration award pursuant to section 9 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 9.

In opposition, Defendant filed a motion to dismiss the petition on January 28, 2005. Plaintiff filed a response to the motion to dismiss on February 7, 2005. This Court held a hearing on Plaintiff's petition and Defendant's motion.

**II.   Legal Analysis**

The FAA creates a body of law that governs certain commercial agreements to arbitrate. *See* 9 U.S.C. § 1 *et seq.* "The preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that [the federal courts] rigorously enforce agreements to arbitrate . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to

3

>arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

It is clear that this case falls under the FAA. In Paragraph 10 of the Management Agreement, both parties contracted in writing that any dispute arising out their commercial contract would be submitted to binding arbitration. Furthermore, both parties agree that the FAA is the applicable law governing their arbitration dispute, as both parties cite FAA provisions in their briefs supporting their respective arguments.

Section 9 of the FAA gives the standard applied by a court in confirming an arbitration award; sections 10 and 11 give the standards for vacating or modifying an award. *See* 9 U.S.C. §§ 9-11. Defendant, however, does not seek to vacate or modify the final award given by the arbitration panel. Instead, in its motion to dismiss, Defendant argues that this Court has no jurisdiction to enforce the award.

## III.    Defendant's Motion to Dismiss

Defendant gives two reasons supporting its argument that this Court has no jurisdiction to confirm the final arbitration award. First, Defendant claims that it is immune from suit pursuant to the Eleventh Amendment. Second, Defendant claims that the parties to the Management Agreement never agreed to give the authority to enforce the arbitration award to this Court. The Court will consider both arguments in turn.

### 1.    Eleventh Amendment Immunity

Defendant argues that because it is a public school academy, it has immunity pursuant to the

Eleventh Amendment. The Eleventh Amendment grants to the states immunity from suits: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Certain state institutions also enjoy state immunity as an arm or alter ego of the state. *See Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984) ("the application of the Eleventh Amendment turns on whether said agency or institution can be characterized as an arm or alter ego of the state"). On the other hand, institutions such as "[m]unicipalities, counties and other political subdivisions (e.g., public school districts) do not partake of the state's Eleventh Amendment immunity." *Id.*

To determine whether an entity is an arm or alter ego of the state enjoying immunity, or a political subdivision without immunity, a list of factors must be considered. Of these factors, "the primary issue is whether the state would ultimately be liable for any money judgment against the entity." *Dubuc v. Michigan Board of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (citing *Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999)). Although there is no set list of factors for determining whether an entity is an arm of the state, some factors which have been used in the past include how the entity is defined in relation to the state, and the amount of control the state exercises over the entity. *See id.*

The primary factor may actually be dispositive in determining the question of whether an entity enjoys Eleventh Amendment immunity. The United States Supreme Court in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30 (1994), emphasized this primary factor above all others, calling it "the most salient factor in Eleventh Amendment determinations." *Id.* at 48. While there

is speculation that the Supreme Court discussion in *Hess* eliminated the need to consider other factors, the Sixth Circuit has declined to make this judgment. *See Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003) ("we now recognize that the question of who pays a damage judgment against an entity as the most important factor in arm-of-the-state analysis, though it is unclear whether it is the only factor or merely the principal one"). Because of the uncertainty, this Court will consider all the factors, while placing significant weight on the primary factor.

Defendant does not satisfy the primary factor, as the State of Michigan is not potentially liable for any money judgment against Defendant. As a public school academy, Defendant receives state funds for the education of students and the management of the school. Upon receipt of these funds, the money becomes that of Defendant, not the state. Since the state-contributed funds no longer belong to the state, a subsequent judgment seeking payment from Defendant that exceeds Defendant's assets could not then be satisfied by diverting funds from the state treasury. Therefore, a suit against Defendant does not threaten the state treasury with any potential liability.

In addition, by statute, the State of Michigan has limited any potential liability it might incur from a public school academy. The relevant statute of the law governing public school academies reads:

> (1) An agreement, mortgage, loan, or other instrument of indebtedness entered into by a public school academy and a third party does not constitute an obligation, either general, special, or moral, of this state or an authorizing body. The full faith and credit or the taxing power of this state or any agency of this state, or the full faith and credit of an authorizing body, may not be pledged for the payment of any public school academy bond, note, agreement, mortgage, loan, or other instrument of indebtedness.
>
> (2) This part does not impose any liability on this state or on an authorizing body for any debt incurred by a public school academy.

M.C.L. § 380.503b.  Therefore, the State of Michigan is not subject to any potential liability from Defendant, and Defendant's primary factor in establishing state immunity as an arm of the state is not established.

The remaining factors do not support Defendant's position that it is an arm of the state. Several factors indicate that Defendant is a separate entity with some independence from the State of Michigan: Defendant is separately incorporated; as a charter school, Defendant enjoys a significant amount of autonomy in managing itself;  Defendant is capable of entering into contracts with individuals and corporations; and Defendant can sue and be sued in its own capacity.  In its motion to dismiss, Defendant gives two factors for why it is an arm of the state.  First, quoting the statute governing public school academies, Defendant argues that the powers granted to a public school academy "constitute the performance of essential public purposes and governmental functions of this state."  M.C.L. § 380.501(1).  Second, Defendant argues that unlike Michigan municipalities, public school authorities are statutorily prohibited from levying taxes.  These factors do not overcome the primary factor and the other secondary factors which support the conclusion that Defendant is a separate entity, not an arm or alter ego of the state.  Consequently, Defendant is not protected by Eleventh Amendment immunity, and can be sued in this Court.

    **2.**    **Parties' Language in the Management Agreement**

Defendant argues that the petition is improper because the parties did not specifically agree in the Management Agreement to vest jurisdiction in this Court.  In support, Defendant cites only the first part of section 9 of the FAA, arguing that it is necessary for court enforcement of an

arbitration award, first, that the parties agree that judgment will be entered once the award is granted, and second, that the parties specify in which court the judgment is to be entered. The quoted portion of the FAA cited by Defendant states:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

It is true that there is no explicit provision in the Management Agreement vesting jurisdiction in a specific court. However, as Plaintiff observes, Defendant neglects to give the sentence that immediately follows the above quoted passage from the FAA: "If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." *Id.* In this case, the arbitration panel issued its final award here in the Eastern District of Michigan. Thus, under the clear and plain language of the FAA, application for enforcement of the arbitration award between the parties can be made here in the Eastern District of Michigan.

Plaintiff additionally observes that the Management Agreement does sufficiently specify the court where application for enforcement of the judgment may be made. Plaintiff notes that in Paragraph 10 of the Management Agreement, the binding arbitration clause states that arbitration will be "in accordance with the rules of the American Arbitration Association." Def. Mot., Ex. A, ¶ 10 (Jan. 25, 2005). Rule 1 of the AAA Commercial Rules states: "The parties shall be deemed to

have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association . . . ." Pl. Resp., Ex. H (Feb. 7, 2005). Consequently, through Paragraph 10 of their contract, Plaintiff and Defendant agreed to incorporate the AAA rules into their Management Agreement. Rule 48(c) of the AAA Commercial Rules provides: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." Pl. Resp., Ex. H (Feb. 7, 2005).

"[T]he FAA does not independently confer subject matter jurisdiction on the district court." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000). Instead, "there must be diversity of citizenship or some other independent basis for federal jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 n.32 (U.S. 1983). In this case, there is proper subject matter jurisdiction because the parties satisfy the requirements for diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thus, since Plaintiff and Defendant agreed to incorporate AAA Rule 48(c) into the Management Agreement and because this Court is a "court having jurisdiction," Plaintiff and Defendant have consented that judgment may be entered by this Court. Pl. Resp., Ex. H (Feb. 7, 2005).

**IV.     Plaintiff's Petition for Confirmation of Award**

Plaintiff has submitted a valid petition for confirmation of a valid arbitration award. In the past, this same Court set out the standard for reviewing arbitration awards:

> According to the Sixth Circuit, "courts play only a limited role in reviewing arbitration decisions." . . . The FAA expresses Congress's "presumption that arbitration awards will be confirmed." . . .

> This Court may set aside an arbitration award under the FAA "only upon a finding that certain statutory or judicial grounds are present." . . . In particular, an arbitration award "will be binding on the parties unless they challenge the validity of the underlying contract to arbitrate under [9 U.S.C.] § 2 of the FAA or seek to vacate, modify, or correct the award under [9 U.S.C.] §§ 10 or 11."

*Barcume v. City of Flint*, 132 F. Supp. 2d 549, 555 (E.D. Mich. 2001) (Gadola, J.) (citations omitted).

Defendant does not challenge the validity of the underlying contract, nor seeks to vacate or modify the final award given by the arbitration panel under sections 9 or 10 of the FAA. Instead, in its motion to dismiss, Defendant simply argues that the Court has no jurisdiction to enforce the award against Defendant. Not only was this was shown above to be incorrect, but the Court has considered the merits of Defendant's motion to dismiss and found them lacking. Furthermore, after review of the petition, the Court finds no defects that hinder the petition from being confirmed.

## V. Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to dismiss [docket entry 19] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's first amended petition for confirmation and enforcement [docket entry 16] is **GRANTED**.

**SO ORDERED.**

Dated:  September 30, 2005             s/Paul V. Gadola
                                                         HONORABLE PAUL V. GADOLA
                                                         UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on   September 30, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                          Timothy S. Arnold; Erika Butler-Akinyemi                    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                           .


                                                s/Ruth A. Brissaud
                                                Ruth A. Brissaud, Case Manager
                                                (810) 341-7845

11